PROVOSTS', J.
A certain tract of timbered swamp land situated in the parish of Iberia, containing 350 acres, stood of record in the name of Sophia Turner. David Todd, attorney at law, persuaded Mrs. Sophia Schindeldecker, an illiterate person, unable to sign her name, who during a former marriage had borne the name of Turner, that this land belonged to her, and induced her to reluctantly give him a power of attorney to sell it.
Todd at once sold the land to Elias A. Pharr for $499.17. Of this he gave $100 to Mrs. Schindeldecker.
Pharr acted in good faith, but Mrs. Schindeldecker did not own the land, and the sale *60 of it to Pharr was an unadulterated fraud conceived and executed by Todd.
Some nine years thereafter, in December, 1901, the real owners brought suit against Pharr, claiming the land, and praying judgment against him for $3,690, the alleged value of 738 cypress trees alleged to have been taken by him from it. Pharr filed an answer, in which he pleaded the general issue, alleged his purchase of the land, specially denied having taken the trees or any part thereof, and specially denied that the trees sued for were worth the amount alleged.
The truth was that 535 trees had been taken by Pharr, worth about $1,500.
At this conjuncture Todd approached the parties separately, and proposed to them a compromise. To the attorneys of the Turner heirs he said:
“If you will acknowledge Pharr’s ownership of the timber and dismiss your suit, I will pay you $300, which will compensate you for the trees, and I will obtain Pharr’s cancellation of my sale to him, which will quiet your title to the land.”
To Pharr he said:
“If you will cancel the sale, I will secure from the Turners a recognition of your right to the timber and the dismissal of their suit. You will give up the land, but keep the timber.”
The parties accepted, and Todd drew up and submitted separately to Pharr and to the attorneys of the Turner heirs for their signature a document supposed to embody the above conditions, but which, instead of expressing the exact agreement with reference to the trees, was made to read as follows:
“And the said David Todd is to pay for the cypress trees stumpage on said land (the cypress trees of marketable size for lumber on said land) at the usual rate in our market, persons selected by the plaintiff’s attorneys and said David Todd, of experience, to estimate value of same on said tract.
“The said Todd is to pay down three hundred dollars advance on said stumpage (trees) which said stumpage (trees) is to belong to E. A. Pharr, said check of said Todd for $300.00 being now appended to this agreement in order to carry out his part of same.”
The agreement was signed by Pharr and by Messrs. Cammack & Muller, local attorneys, representing Mr. Johnston Armstrong, of New Orleans, the attorney of the Turner heirs, who were residents of the state of New York. Mr. Armstrong demurred to the compromise, and would not submit it to his clients for ratification unless the amount to be deposited by Todd was increased, and thereupon the following addendum was made to the agreement:
“It is agreed further that the time to survey the land and count the trees (cypress) of marketable size taken by said Pharr is extended by request of plaintiff’s counsel in suit of Harrison G. Turner et ais. vs. E. A. Pharr et als. to eight months from this date and this refers to land the said Pharr has cancelled the sale by recent act in favor of. Turner heirs in Sec. 20 T. 12 S. R. 8 E. in this parish and said Todd now deposits an additional sum of Two hundred dollars over and above the $300.00 already paid as further security for said stump-age, the same to be held in bank subject to the order of A. J. Cammack and in case the' stump-age does not exceed in value the three hundred dollars paid said $200,00 is to return to said Todd, and the value of stumpage to be determined by experts mentioned in original agreement filed in recorder’s office. The said suit is to be dismissed at once. The survey costs mentioned in original agreement are to be divided equally. David Todd.
“Cammack & Muller, Attys.
“February 4th, 1902.”
It will be noted, that under the terms of this addendum the payment, to be made by Todd was to be for the trees which had been “taken by said Pharr,” whereas under the agreement itself it was to be for “the trees on said- land”; i. e., still remaining on said land. It will be noted also that Pharr was not a party to the addendum.
In pursuance of the agreement, Pharr canceled the sale made to him by Todd, and the heirs of Turner dismissed their suit; but the counting of the trees was for some cause or other delayed, and the settlement between the heirs of Turner and Todd did not take place until the following September, when, on Todd’s suggestion that $465 was approximately the value of the trees taken, the attorneys of the heirs of Turner accepted that *61 amount from him in full settlement, they being satisfied that this was as much money as they could hope to realize out of the matter net; Todd being financially irresponsible.
Things remained in that condition until April, 1903, when, the heirs of Turner having undertaken, through the defendant Shadel, to market the remainder of the timber on the land, Pharr brought the present suit, claiming ownership of all the trees on the land, and asking that the trees already cut and moved by Shadel be sequestered.
The heirs of Turner are interveners in the suit. After giving the history of the compromise between Pharr, Todd, and themselves, they aver that the only trees conveyed to Pharr by said compromise were those which at that time had already been taken by him, and that the trees remaining on the land were not so conveyed, and that, if embraced within the terms of the instrument evidencing the compromise (which they deny), the said instrument is broader in its terms than they understood it to be at the time they agreed to and signed it, and that in such case they signed it in error. They pray that the sequestered timber be decreed to be their property, and the sequestration be dissolved, with damages; and, in the alternative, in ease the court finds that the said trees are embraced within the terms of the instrument evidencing the compromise, then that the said compromise be set aside.
The plaintiff, Pharr, does not set forth in his petition the derivation of his title. On the trial he at first sought to rely solely upon the Todd title. He offered it in evidence and rested. Interveners met his tactics by, after his example, proving their title and resting. Theirs was evidently the true title, and it became necessary for Pharr to fall back upon the compromise, and this he proceeded to do. The interveners objected on the ground that he had closed his ease except as to rebuttal evidence, and that this compromise was not in rebuttal of anything proved by them. The court overruled the objection, and properly, since the interpretation and validity of this compromise were the real issues under the pleadings. The interveners then offered evidence in support of their allegation of error.
The instrument of compromise is susceptible of no other interpretation than that put upon it by Pharr, namely, of conveying the trees remaining on the land; indeed, the wonder is that the attorneys of the heirs of Turner could have understood it differently. But the evidence leaves no doubt whatever that they did so understand it, and, furthermore, that, if they had not so understood it, they would never have signed it. Apart from their positive testimony to that effect, and the contemporaneous addendum drafted by them, which shows what their idea was, there is a fact which of itself would be almost conclusive that they could not, in their senses, have subscribed to the other interpretation. The land is swamp land, valuable only on account of the timber. Knowing this, and also that Pharr’s pretended title was not serious, they would hardly have consented to let Pharr have the timber, and they keep the land — let Pharr have the oyster, and they keep the shells.
The error complained of bore on the thing sold. Pharr thought he was buying the trees on the land. The heirs of Turner thought they were selling the trees which at that time had been already taken by Pharr. Such error as to the thing may be shown by parol. Hennen, Dig. p. 541, No. 7.
The compromise must be set aside as having been agreed to in error; and, since Pharr acquired no title from Mrs. Schindeldeckei; who was not owner, the interveners must be recognized as owners of the trees sequestered, and the sequestration must be dissolved. But they are responsible, as much as Pharr is, for the error which led to the sequestration, and hence must divide its costs.
The court decides the case as it is present *62 ed. It has been tried both on the title to the land and on the validity of the compromise, and the issues thus tried and submitted for decision are passed on. But necessarily the present judgment is not binding upon David Todd, who is not a party to the suit.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, so as to read that the costs of the sequestration be paid one-half by the interveners and one-half .by the plaintiff, Pharr, and that, as thus amended, it be affirmed. The appellees to pay costs of appeal.