The plaintiffs are James Matthews, Charles Matthews, George Matthews, Jr., Andrew Matthews, Jesse Matthews, Frances Matthews Prevost and Rose Matthews Ruffin, seven of the children and heirs of George Matthews, Sr., and wife, both deceased; also Ruby Matthews Bennett, one of three children and forced heirs of a predeceased son of George Matthews, Sr., and wife, and the tutrix of a minor, a grandchild of said George Matthews, Sr., and wife. They allege that they are the owners of certain lands in Terrebonne Parish as heirs of said George Matthews, Sr., and wife, deceased, in the proportion of an undivided one-ninth interest to the first named seven plaintiffs; an undivided 1/36th interest to Ruby Matthews Bennett, and an undivided 1/18th to the minor; that the defendant, who represented himself to be a lawyer in the State of California, contacted plaintiffs and told them they had a claim to some lands in the State of Washington and that he would undertake to recover these lands for them for a one-fourth interest therein; that the defendant drew up and had them sign a document which he represented to be a contract to recover their interest in some land in the State of Washington on a contingent fee of one-fourth of the interest recovered, and they, relying on the false and fraudulent representations made by the defendant, signed said contract which they later discovered purported to give the defendant a power of attorney to handle their affairs and they purportedly assigned to him a one-fourth interest in the minerals in their lands in Terrebonne Parish.
They allege that the defendant concealed from them the fact that said instrument contained a transfer to him of a part of the mineral rights in their land in Terrebonne Parish; that he represented to them that it only covered their interest in lands in the State of Washington; that they relied on the superior knowledge of the defendant as a lawyer and put their trust in him and were misled by him in signing said document; that they are ignorant negroes, and the defendant is of their own race and claimed to be a lawyer; that said defendant pretended to read the said instrument to them but omitted and did not tell them of that part of the document which referred to their transfer of an interest in the minerals in their land in Louisiana. They asked that the instrument be annulled and set aside and erased from the records of Terrebonne Parish as having been procured through fraud and error; that said purported power of attorney was without consideration, and if there was any consideration, it had failed.
In due course the defendant appeared in his own proper person and filed in one pleading exceptions of no cause or right of action; misjoinder of parties plaintiff, want of interest in the plaintiffs, and estoppel in pais. These exceptions were by agreement referred to the merits and later overruled by the court. The only one of these exceptions which seems to be pressed *Page 197 
on the appeal is that of estoppel, the others having been abandoned.
In his answer, the defendant denied that any fraud or misrepresentation was practiced on the plaintiffs, and outlines in his answer how the contract was drawn, discussed and signed. He further sets up evidently in support of his plea of estoppel the signing by plaintiffs of division orders for an oil company which had a lease on the lands, and alleged that one of the plaintiffs had sold his interest in the lands, and had no interest in the suit.
The trial judge rendered a judgment in favor of plaintiffs annulling the contract insofar as it undertook to transfer any interest of plaintiffs in their lands in Terrebonne Parish. The defendant took a devolutive appeal from the judgment.
[1, 2] The defendant filed a motion in this court asking that the judgment be declared null because it was rendered more than thirty days after being submitted to the court. This contention is without merit. While Section 1 of Act No. 94 of 1898 does require district judges to decide cases submitted to them within thirty days, there is nothing in the act which provides for the nullity of a judgment rendered after the expiration of thirty days. Moreover, the record does not show just when the case was submitted to the court. The minutes show that the trial was concluded on June 15, 1944, and a notation then made that the case would be submitted to the court on briefs to be furnished; the defendant to submit his brief not later than July 12th and the plaintiffs to submit a reply brief not later than August 8th. There is nothing to show that the briefs were submitted within the time specified or when the case was submitted to the judge.
The two documents under attack constitute but one contract and are dated respectively May 17th and May 20, 1941. The first one is signed by George F. Matthews, James Matthews, Charles Matthews, Ruby Matthews Bennett and Ida Smith Alsaya, tutrix for the minor, and is accepted by the defendant, I.H. Spears. The other document is in practically the same terms and language and is signed by Frances Matthews Prevost, Andrew Matthews, Jesse Matthews and Rose Matthews Ruffin. These instruments, in substance, state that in consideration of the acceptance by I.H. Spears of employment and his agreement to look after all of the business of the signers in relation to the estate of George Matthews, deceased, and to manage and control same for the signers and for giving the signers advice and counsel, they named and appointed said Spears their attorney in law and in fact to handle their entire business in connection with the estate of George Matthews, Sr., consisting of land in Terrebonne Parish, Louisiana, and in the State of Washington, County of Lewis, the land in Terrebonne Parish being then described.
The instruments then continue by providing that said Spears is to handle, control, lease, sell and collect for all oil, gas or other minerals, mined and produced from said land by any person or corporation leasing or operating same in any manner; to receive all checks and moneys in payment thereof, and to bring any and all suits that may be necessary in enforcing the rights of the signers in said lands, and compromise and settle all claims and suits as said Spears may deem best, the said Spears agreeing to account to each of the signers for their share as often as is reasonably necessary. It is then provided that, in consideration of the advice and services of the said Spears, the signers sell and transfer to him "one fourth of the mineral interest covered by this instrument".
In view of the conclusion reached by us in the case, it will be necessary to consider the claim of the plaintiff, George Matthews, Jr., from that of the other plaintiffs, and what is first said will refer to the other plaintiffs as though George Matthews, Jr., was not a party to the suit. The discussion and disposition of his case will follow.
Seven of the plaintiffs (not including George Matthews, Jr.) testified that George Matthews brought the defendant to the home of one of the plaintiffs and the matter of recovering some land in the State of Washington was discussed; that the defendant drew up the documents which were signed at various times, plaintiffs testifying that the defendant did not read the documents to them but told them that it was an agreement by which they were employing him to recover the lands for them in the State of Washington; that nothing was said about the land which they owned in Terrebonne Parish, and they never agreed to employ him to handle or *Page 198 
control these lands in Louisiana, or transfer to him any of the mineral rights therein, as these lands were already leased for oil and gas and they did not need anyone to handle these lands for them.
The defendant testified that the contracts were read and the plaintiffs were fully aware of what they contained, and that some of the plaintiffs went with him to Houma to look up the description of the property in Terrebonne Parish, and talked to the man who had a lease on the lands. He testified that he filed a suit in the Federal Court in the State of Washington and spent a week in that state looking after the matter for the plaintiffs; that the suit was dismissed because of inability to furnish a cost bond. The defendant claims that he was to handle the Louisiana lands so as to prevent any oil sharks from beating plaintiffs out of their property. He admits that the only thing that he ever did in connection with this property from the time the documents were signed until the suit was filed, a period of over three years, was to collect some of the money due on the oil leases which were given before Spears appeared in the picture, and there was no dispute about these payments, as the holders of the lease were willing at all times to pay the amount for annual renewals. The money for these renewals due some of the plaintiffs having been sent to Spears by the holders of the lease, all that he did was to send them their share, the record showing only two remittances of $8 each in May of 1942, to two of the plaintiffs.
The defendant relies on certain rental division orders signed by the plaintiffs in 1942 to the Shell Oil Company authorizing that company to pay them on the renewals of the lease in certain proportions, and the proportion coming to the plaintiffs owning a 1/9th interest each in the lands was shown to be 80/1044 instead of 1/9 each. It is obvious that the oil company figured these proportions into which to divide the renewals when they prepared them for signature by deducting the one-fourth interest supposed to have been transferred to Spears by the documents which plaintiffs signed and which had been recorded. Spears signed a division order for this company in which he claimed to own a one-fourth interest in the minerals.
[3] There is no estoppel against plaintiffs by reason of their signing these division orders for the Shell Oil Company for at least two reasons: first, because these plaintiffs are not shown to have known that the reduction in their proportionate share by the fraction indicated was the result of any transfer by them to Spears of an interest in the minerals; and, second, the defendant is in no position to plead against these plaintiffs an estoppel because of their signing these orders as he is not shown to have been misled thereby or suffered any disadvantage by reason thereof.
[4, 5] Parol testimony was admissible to show that the instruments were signed because of fraud and error. The plaintiffs had a right to show by parol that through fraud and error the instruments were made to embody a different agreement from that entered into by the parties, or that, through the fraud and misrepresentations of the defendant, the plaintiffs were made to agree to something, the nature of which they did not rightly understand. Le Bleau v. Savoie, 109 La. 680, 33 So. 729; Pharr v. Shadel, 115 La. 92, 38 So. 914.
[6] The decided preponderance of the evidence is to the effect that the defendant did not read to or fully acquaint the plaintiffs with the fact that they were transferring to him a one-fourth interest in the minerals in and under the land which they owned in Terrebonne Parish. The acts of the defendant must be construed in the light of the relation in which he was dealing with the plaintiffs, that of attorney and client.
[7] While there is nothing to prevent an attorney from dealing with his client and acquiring from him property or property rights for a valuable consideration either in money or for services rendered or to be rendered, yet such dealings will be closely scrutinized by the courts, and if it appears that the attorney did not fully inform his client of all phases of the transaction and its full meaning and import, and any disadvantages that might result to the client, the courts will not hesitate to set aside the transaction. 5 Am.Jur., Verbo, Attorneys At Law, §§ 48 and 49, pp. 287, 288 and 289.
It is hardly reasonable to suppose that the plaintiffs, negroes with a very limited education, would have signed a document whereby they transferred valuable mineral rights to the defendant for doing nothing more than they would have done for themselves respecting their property in Terrebonne Parish had they been fully informed *Page 199 
of the meaning of the documents they signed. They relied on defendant as a lawyer of their own race and as a person of superior ability to fully protect them and advise them of the consequences of their signing the documents which he drew up, and if he did not read and fully explain these documents to plaintiffs, they did not understand that they were conveying to him an interest in their minerals.
[8] Furthermore, there was no consideration inuring to these plaintiffs for the conveyance of an interest in the minerals, or if there was, the consideration failed. With reference to the property owned by plaintiffs in Louisiana, there was nothing that defendant did or could do for plaintiffs in handling their property. He did nothing except receive the renewal rentals on pre-existing oil leases and send to some of the plaintiffs the part coming to them. This was no more than the plaintiffs could have done for themselves without the services of an attorney at law or an attorney in fact. Assuming that defendant did make some effort to recover some land for plaintiffs in the State of Washington, it is shown that a good part of his expenses were paid by plaintiffs, and it is shown by the testimony of the plaintiffs that the venture to recover this land was undertaken by defendant on a contingent basis. As to these plaintiffs the contracts were properly set aside.
[9] The other plaintiff, George Matthews, stands in a different position. The record shows that he became acquainted with and later contacted the defendant and asked him to come to Louisiana to represent him. It was this plaintiff who took the initiative and apparently helped the defendant in securing the other plaintiffs to sign the agreements. It is not shown that George Matthews did not know what he was signing, or that the defendant misled him in any way. This plaintiff did not testify in the case. He resides in California and seems to have had other dealings with the defendant as an attorney. While his son testified in the case to the effect that his father was not mentally and physically able to come to court and that the defendant wielded some kind of undue influence over his father, yet there is nothing to show that when George Matthews was helping the defendant to get his brothers and sisters and other kinsmen to sign the agreements, he was mentally or physically disabled to the extent that he did not know what he was doing.
Moreover, it is shown that the defendant did render George Matthews some service. The defendant testified, and it is not disputed, that he was the means of getting $100 for George Matthews and an overriding royalty of $2,500 from the oil leases, whereas the other plaintiffs had previously signed a lease for their interests in the same property to the same company for which they had received only $50 for a like interest.
Furthermore, the record shows that in February, 1942, after he had signed the agreement with the defendant, George Matthews undertook to convey to his wife by a notarial act in the State of California, all of his interest in the lands in Terrebonne Parish, and there is a statement in that deed to the effect that he had previously conveyed to Spears an undivided one-fourth interest in the lands and minerals. While this attempt on the part of George Matthews to convey to his wife property in Louisiana may have been a nullity because of the prohibition against such transfers under the laws of this State, yet this plaintiff has made no effort to explain the declaration in that deed that he had transferred his interest in the lands and minerals to Spears.
For the reasons assigned, it is ordered that insofar as the judgment appealed from ordered the cancelling and setting aside of the contract signed by George Matthews in favor of the defendant on May 17, 1941, the said judgment is avoided and reversed, and it is now ordered that the suit of said George Matthews be dismissed and his demands rejected; that in all other respects the said judgment be and the same is hereby affirmed; plaintiff, George Matthews, to pay one-ninth of the costs, and the defendant to pay all other costs. *Page 200