HALL, Judge pro tem.
This is a consolidated appeal arising out of two suits filed in the Civil District Court for the Parish of Orleans, being numbers 366-020 and 366-053 of the docket of that Court.
The controversy between the parties has its inception in and revolves around (a) a notarial act of sale executed before Rudolph O. Vorbusch, notary public for the Parish of Orleans, dated May 23, 1950, wherein Paul C. Skrmetta appearing therein as vendor purportedly sold to Herman J. Agre-gaard, appearing therein as purchaser, certain property bearing the Municipal Nos. 1240-42 South Broad Street and 3953 Erato Street in the city of New Orleans; and (b) a lease of the same property from Agre-gaard as owner to Skrmetta as tenant by act under private signature dated the same day.
In suit No. 366-020, Agregaard as owner of the property acquired by virtue of the act before Vorbusch, notary, filed a summary rule for possession of said premises against Skrmetta as tenant for nonpayment of rent due under the written lease aforementioned, and cumulated in the same proceeding an ordinary money demand against the defendant for rent then due and to become due during the pendency of the proceedings.
The trial court dismissed the rule for possession on an exception based upon the doctrine of Babst v. Hartz, 161 La. 427, 108 So. 871, but preserved the demand for a money judgment. This suit was filed on October 21, 1958.
On October 22, 1958, Skrmetta filed suit against Agregaard under docket No. 366-053 of the Civil District Court in which Skrmetta alleged in substance that he had acquired the Broad and Erato Street property in January 1950 and June 1948, that he is a man of very limited education; that Agregaard had been his attorney for many years and an advisor in whom he had complete confidence; that in May 1950 he consulted Agregaard with reference to offers which he had received for the purchase of the Broad and Erato Street property for $55,000.00 and was advised by Agregaard not to sell because in his opinion it was worth more and would increase in value as a result of the proposed Broad Street overpass; that Agregaard then offered to lend him some money if he needed some to avoid a sale and did actually on or about May 18, 1950 make an unsecured loan to him in the sum of $10,000.00; that thereafter Agre-gaard informed him that it would be necessary to give security for the loan and that he would prepare the papers for petitioner’s signature, explaining that instead of a second mortgage (the Commonwealth Homestead Association held a first mortgage on the property) he would prepare an act of sale which would serve only as a security *365 device and that petitioner could at any time redeem said property by repaying the loan; that acting on the advice of Agregaard in his capacity as a counselor and attorney and in reliance on his verbal agreement to recover the property, petitioner on the instructions of Agregaard signed some papers prepared and submitted to him by Agregaard without reading same and without defendant or anyone else reading or explaining the same to him; that these papers turned out to be a sale of his property to Agregaard by authentic act before Vorbusch, notary, dated May 23, 19S0 and a lease under private signature from Agregaard to him dated the same date whereby he purportedly rented the property from Agregaard at a rental of $400.00 per month; that petitioner did not know he was signing a lease; that a lease had never been discussed between them; that Agregaard had him sign the instrument without informing him of its contents and that he was induced to sign same by Agre-gaard while said defendant was acting in his capacity as a trusted attorney and counselor; that he did not know he had signed a lease until September 30, 1958; that prior to said date Agregaard had never furnished him a copy of either the sale or the lease; that petitioner has always been in possession of the property and made monthly payments to Agregaard at the rate of $400.00 per month for thirty-three months and thereafter at the rate of $500.00 per month; that these payments were not rent but represented 'installments of principal and interest on his loan. Skrmetta’s petition in this suit concluded with a prayer for judgment ordering Agregaard to re-transfer the Broad and Erato Street property to him upon petitioner’s paying the purchase price plus interest.
On November 21, 1958, Skrmetta filed an answer to Agregaard’s suit (No. 366-020) against him for rent in which he set forth as a defense substantially the facts alleged in his suit against Agregaard (No. 366-053).
The two cases were consolidated and tried before a jury. The jury rendered verdicts in favor of Skrmetta in both cases by a 9-3 vote and the District Court entered judgments accordingly.
Agregaard has appealed suspensively and devolutively from each judgment.
Appellant, Agregaard, reurges in this Court exceptions of no cause or right of action and of prescription which were filed in No. 366-053 and overruled by the District Court. Appellant also complains of the action of the District Court in overruling his objection to parole evidence being admitted for the purpose of contradicting or varying the act of sale before Vorbusch, notary.
We prefer however to pass over these matters and to consider and decide these cases on the facts as disclosed by the record.
Since the decision in Agregaard’s suit against Skrmetta for rent (No. 366-020) will necessarily be controlled by the decision reached in Skrmetta’s suit against Agre-gaard for retransfer of the property (No. 366-053) we shall hereafter confine our remarks to the latter suit.
Skrmetta’s entire case is based upon the proposition that all of his dealings with Agregaard with reference to the property in question were as client and attorney and he relies on the law relative to such fiduciary relationship as set forth in 7 C.J.S. verbo Attorney and Client § 125 et seq.; 5 Am. Jur. verbo Attorneys at Law, Sections 48 et seq.; and in the Louisiana cases, Searcy v. Novo, La.App., 188 So. 490, and Matthews v. Spears, La.App., 24 So.2d 195.
The first question of fact presented is whether the relationship of attorney and client existed between the parties, and more particularly whether such a relationship existed at the time of the sale and with reference to the subject matter thereof.
The record shows that Skrmetta and Agregaard were boyhood acquaintances in Biloxi, Mississippi; that after childhood they went their separate ways, but be *366 came acquainted again in 1938 or 1939 when Skrmetta moved to New Orleans where Agregaard had been engaged in business and in the practice of law since 1934; that thereafter he and Agregaard had various business dealings with each other including an oil venture, a boat building venture and a business venture relative to a patent for a shrimp peeling machine; that on more than one occasion Agregaard or his wife loaned Skrmetta money for his other business manipulations.
The record further shows that although Skrmetta had little formal education, he had many business interests besides those in which Agregaard had a part — he conducted a sea food cannery on the Broad and Erato Street premises, he owned a barroom in New Orleans at one time and a cocktail lounge in Jefferson Parish and bought and sold real estate on various occasions.
Skrmetta’s testimony in large part is devoted to an effort -to show that Agregaard had been his attorney and confidential counselor in all matters since his arrival in New Orleans but when pinned down to details the only attorney-client relation between them throughout the years is revealed to be the handling by Agregaard of three or four isolated bits of legal business of no great consequence. Agregaard has never been retained by Skrmetta by the year, by the month, or for any other period of time.
In fact, during their acquaintanceship, Skrmetta has been a party to several transactions, each involving tens of thousands of dollars, in which he did not call upon Agre-gaard to act as his attorney.
It is clear from the record that the relationship between the parties has always been a business relationship, rather than one of attorney and client.
As to their dealings with reference to the Broad and Erato Street property, Skrmet-ta’s testimony is as follows: That he went to see Agregaard about selling his club— Midway Lounge, and was advised by him not to sell, that he then told Agregaard that “people” were talking about buying his Broad and Erato Street property, and that Agregaard advised him not to sell because it would increase in value, and the Agre-gaard then offered as a substitute to lend him $10,000.00.
Agregaard categorically denies this but even if true it hardly amounts to legal advice or to proof of the existence of an attorney-client relationship with reference to the sale of the property.
Our conclusion on the basis of the whole record is that with reference to the property in question the parties dealt with each other as business men at arm’s length rather than as attorney and client.
Although this conclusion strikes at the foundation of Skrmetta’s suit we do not rest our decision on that alone.
Skrmetta testified further that a few days after Agregaard offered to lend him $10,-000.00, viz. on May 15th or 16th, 1950, he went to Agregaard's office where Agre-gaard gave him some papers to sign; that no one else was present; that the papers were not filled out and that he signed them in blank; that Agregaard said it was a second mortgage and that he would fill out the papers later and that when Skrmetta needed money he would give it to him; that he thought at the time that he had signed a second mortgage for $10,000.00; that between May 17th and May 20th he received several relatively small checks from Agregaard and that on May 21st or 22nd Agregaard gave him more blank papers to sign and told him to come back the next day; that when he returned on May 23rd, 1950, he is positive that he signed nothing but that on that day Agregaard gave him “around $8,000.00” and a mortgage note for $7,300.00 payable to him and signed by .Agregaard; that upon receipt of the mortgage note on May 23, 1950, he realized that what he had signed was a sale of his prop *367 erty to Agregaard and that Agregaard told him he could repurchase it at anytime he wished upon re-payment of the purchase price plus 10% interest.
Skrmetta further testified that no one else was present when Agregaard induced him to sign the various papers, that none of them were filled out when he signed nor were any of them read or explained to him and that no one else was present on May 23rd when Agregaard gave him the $8,-000.00 and the mortgage note and promised to retransfer the property whenever called upon to do so.
Skrmetta further testified that after the sale he remained on the property; that he paid Agregaard $400.00 per month for thirty-three months and thereafter $500.00 per month as installments of interest and principal on the repurchase price of the property; that he did not know until over eight years later (just before the first suit) that among the instruments he had signed was a lease of the property bearing the date of May 23, 1950.
Agregaard denied Skrmetta’s testimony in toto.
The transfer of the Broad and Erato Street property from Skrmetta to Agre-gaard was made by notarial act before Rudolph O. Vorbusch, notary. The act is dated May 23, 1950, and the consideration recited therein is $35,000.00 made up as follows: Assumption by Agregaard of first mortgage held by Commonwealth Homestead, $17,700.00, second mortgage in favor of Skrmetta $7,300.00, balance of $10,000.00 payable cash.
Dated the same day is a lease of the property from Agregaard to Skrmetta at a rental of $400.00 per month.
Agregaard’s testimony is that on May 12, 1950, Skrmetta signed an offer to sell the Broad and Erato Street property for $40,-000.00; 'that he investigated the property and rejected the offer; that in the process of investigating the property he ascertained for the first time that the property had a C.A.B. appraisal of only $26,000.00; that the property was burdened by a first mortgage to Commonwealth Homestead for its maximum loan value; that on May 15, 1950, Skrmetta contacted him by telephone and they agreed on the price of $35,000.00; that on May 16th Skrmetta signed an offer at that price and he accepted same.
Each of the offers contains a break-down of the purchase price and each is conditioned upon a lease of the property by Skrmetta. The originals of both offers signed by Skrmetta are found in the record. Parenthetically, it might be added that the offer which Agregaard accepted binds him to pay any commission that Skrmetta might be forced to pay as a result of an unexpired listing contract held by Latter & Blum covering the property in question.
Agregaard testified that he drew up the papers and on May 23, 1950, the sale was passed before Vorbusch, notary. The lease was signed by the parties the same day.
Contrary to Skrmetta’s testimony, both the notary who passed the sale and the two subscribing witnesses (all disinterested parties) testified that the sale and the lease were signed by both Agregaard and Skrmetta in their presence and that the instruments were read to Skrmetta and fully explained to him before signing.
Skrmetta’s testimony to the effect that although he paid $400.00 per month to Agregaard from the date of the sale and lease until May of 1953 and thereafter $500.00 per month until sometime in 1958, the payments were installments of interest and principal on the repurchase of the property is belied by the fact that his own books carry each of these monthly payments as “rent”. Furthermore in his Federal Income Tax Return for the fiscal year ending July 1950 (the only income tax return found in the record) Skrmetta discloses a capital gain resulting from the sale of the property and a deduction of $1,-200.00 for “rent”. Incidentally, Skrmetta *368 denies ever having received a statement of the sale from Agregaard, yet this same income tax return shows Skrmetta made a deduction of $51.00 as expenses of the sale, which is the exact figure carried on the statement which Agregaard testifies he gave him on May 23, 1950.
When confronted with his books and his tax return, Skrmetta’s explanation was that when he issued the first of the $400.00 monthly checks, his bookkeeper asked him how to carry the payment on his books; that he thereupon telephoned Agregaard and was told by him to carry it as “rent” which he did and continued to do thereafter. Similarly, he testified that his tax return was prepared by his auditor under instructions from Agregaard. All of this is likewise denied by Agregaard.
Neither the bookkeeper nor the auditor was placed on the stand to corroborate Skrmetta’s story. While the record shows that the auditor was in Japan at the time of the trial, there is no explanation given for not producing the bookkeeper. The inference is that her testimony would have harmed rather than helped him.
It would serve no useful purpose to further review the record.
Skrmetta’s entire case rests on his testimony alone. His testimony is destroyed by his conduct at a time unsuspicious, and is not corroborated by a single witness nor by any documentary evidence except in two relatively unimportant details as follows: (a) Skrmetta’s son testified that he was present and heard Mr. Henry Pierson, an attorney, who was then representing his father, demand a retransfer of the property and (b) there was some testimony by realtor, Marx Jeffer, that the Skrmetta property'was worth $50,400.00 in May of 1950.
However, Mr. Henry Pierson, a prominent member of the local Bar and easily available was not called upon to testify, and there is considerable doubt as shown by the record, whether Jeffer’s appraisal was actually made in 1950 or whether it was a “hind-sight” appraisal made at the time of the trial.
On the other hand Agregaard’s testimony is corroborated in every detail by the testimony of unbiased witnesses and by irrefutable documentary evidence.
Our conclusion, based upon a painstaking study of the record, is that with regard to the property in question, the relationship of the parties was not that of attorney and client but that of business men dealing at arm’s length; that Skrmetta knew exactly what he was doing; that no advantage was taken of him; that Agregaard contracted to pay a fair price for the property and that he has discharged all of his obligations to Skrmetta to the last penny.
In our opinion the verdict of the jury and the judgment entered thereon by the District Court in each of the cases is manifestly erroneous.
For the above reasons the verdict of the jury in No. 366-053 of the docket of the Civil District Court entitled “Paul C. Skrmetta vs. Herman J. Agregaard” is set aside and the judgment rendered by the District Court in that matter is reversed and plaintiff’s suit is dismissed at his cost, including cost of this appeal.
In No. 366-020 of the docket of the Civil District Court entitled “Herman J. Agregaard vs. Paul C. Skrmetta” the verdict of the jury is set aside and the judgment of the District Court rendered therein is reversed and that cause is remanded to the District Court for the purpose of determining the amount of rent presently due by Skrmetta to Agregaard and for the rendition of a judgment in favor of Agregaard for the amount so determined to be due together with interest and costs, including costs of this appeal.